DERMOTT, *Appellant and Respondent,* v. CARTER *et al.*

DIVISION TWO.

1. **Judgment Lien:** UNITED STATES CIRCUIT COURT: ACTS OF CONGRESS. Under the United States statutes relating thereto, a judgment rendered in 1873 in the United States circuit court for the eastern district of Missouri, in a cause pending at the time of the establishment by act of congress of June 8, 1872, of separate United States circuit courts for eastern and western districts of Missouri, created a lien on land situated in Jasper county, although said county by the foregoing act of congress became a part of the western district.

2. **Conveyance:** BONA FIDE PURCHASER. Where a married woman without consideration conveys land devised by her father to her before her marriage, and her grantee without consideration transfers the land to the husband in trust for the wife, and subsequently the husband and wife unite in another voluntary conveyance, and their grantee reconveys to the wife, no consideration being paid, such last conveyance is *bona fide.*

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*George Hubbert* for appellant, John A. Carter.

(1) The judgment of the United States circuit court for the eastern district of Missouri was a lien upon the land in question. 1 Black on Judgments, secs. 413, 415; *Baker v. Morton,* 12 Wall. 150; *McMicken v.*

*Smith*, 11 Pet. 25; Freeman on Judgments, sec. 403; R. S. of U. S. [Ed. 1878] secs. 653–4. (2) The deed from Myra Wyne and her husband, George Wyne, to J. H. Haines, made with the intention of vesting the title in Haines as a means (in connection with a deed from him) of transferring title from Myra to George Wyne, having been delivered to the recorder and duly placed of record after due acknowledgment by the grantors, and acted upon as a valid instrument by Haines in executing the contemplated deed to George Wyne, must be taken in legal contemplation as having been duly delivered. That being the intention of all the parties, and their acts having proceeded upon that assumption, the law cannot declare otherwise. Delivery of deed a matter of intention, generally. Tiedeman in 5 English & American Encyclopedia of Law, 447; *Burk v. Adams*, 80 Mo. 504; *Thatcher v. St. Andrew*, 37 Mich. 264; *Farrar v. Bridges*, 5 Humph. 411; *Standiford v. Standiford*, 97 Mo. 231; *Jaques v. Church*, 17 Johns. 549; *Gould v. Day*, 94 U. S. 405. (3) The deeds to and from J. H. Haines operate as estoppels, and are binding on plaintiff, not only as to the fact of conveyance, but as to valuable consideration therefor, and the uses to which such conveyances were made. No trust for, or use to, Myra Wyne could be raised by oral evidence as to the intention of the parties at the time. While a married woman is estopped by her deed duly acknowledged under the statute, such a deed cannot be construed to have, or be given, other effect than it fairly expresses. Lawson on Remedy & Practice, sec. 2701; Rawle on Covenant for Title [4 Ed.] p. 388; [2 Ed.] p. 410; *Doe v. Dowdall*, 3 Houst. 369; 2 Washburn on Real Property [2 Ed.] star p. 134, sec. 43, p. 134; star p. 142, sec. 6, p. 141; *Henderson v. Henderson*, 13 Mo. 151; *Bobb v. Bobb*, 7 Mo. App. 501; *Bobb v. Bobb*, 89 Mo. 411; *Jackson v. Cleveland*, 15 Mich. 94.

*R. T. Buller* for appellant, John Dermott.

(1) The circuit court might well have found that the deed to Haines was never delivered. He swears it was not, and so do both of the Wynes, and, if that was a fact, then Mrs. Wyne never parted with her title, and her husband, George Wyne, never had any title for either the Carter or the Mobley judgment to operate on, and this would dispose of the whole case at once by leaving the title in Mrs. Wyne by virtue of her father's will. *Jackson v. Phipps*, 12 Johns. 421; *Young v. Duffield*, 3 Wall. 636; R. S., sec 14, p. 464; 60 Mo. 31.
(2) Under the evidence the court could not have done otherwise than to find that Bray was an innocent purchaser from Mrs. Wyne, and an innocent purchaser even from a fraudulent grantee will be protected. *Gordon v. Ritenour*, 87 Mo. 54, 61, and cases cited; 1 Story's Equity Jurisprudence, 331. Wyne having conveyed the land, September 4, 1887, before either Mobley or Carter obtained judgments against him, neither of these judgments ever was a lien upon it. *Miller v. Sherry*, 2 Wall. 237. (3) Mrs. Wyne was the real owner of the land all the time. The evidence shows that it was deeded to her husband, without consideration merely for convenience, and that he held it as her agent, and agreed to reconvey it whenever she so requested him; under such circumstances it would seem that a trust resulted in her favor. 2 Story's Equity Jurisprudence, secs. 1197, 1201. (4) And, whether this be so or not, he certainly was under a moral obligation to reconvey it to her, and his doing so would not be fraudulent as to creditors unless they had given him credit on the strength of his apparent ownership of the property; of that there is no evidence in this case, and there is, therefore, no equity whatever in defendant Carter's claims. *Payne v. Twyman*, 68 Mo. 339; *Bowen v.*

*McKeen*, 82 Mo. 594; 2 Story's Equity Jurisprudence, 1209. (5) The recitals in a deed made by a married woman in this state do not estop her nor those claiming under her. *Crenshaw v. Creek*, 52 Mo. 98; *Rannels v. Gerner*, 80 Mo. 474. There can be no defense on the ground of estoppel unless the defendant has actually altered his situation on account of what was said or done by the other party, nor unless the estoppel was pleaded. *Noble v. Blount*, 77 Mo. 235. (6) No declarations of law were asked nor given upon any of the points involved in this appeal, nor were any exceptions taken to any evidence. Consequently, this court cannot review the finding of the circuit court as to the facts, for the palpable reason that there are no errors of record for the court to review. *Parkinson v. Caplinger*, 65 Mo. 290; *Cunningham v. Snow*, 82 Mo. 587, and cases cited.

THOMAS, J.—This is a proceeding for the partition of land, lying in Jasper county, between plaintiff and John A. Carter and several other parties, whose names it is not necessary to set out. The plaintiff claimed to be owner of two-fifths of the land, but the court found he was entitled to one-fifth only, and so decreed, and he appeals.

The defendant Carter, in his answer, denied plaintiff's ownership of any interest in the land, and alleged that he was the owner of the two-fifths claimed by plaintiff, but the court found that he was entitled to one of these two-fifths only, and so decreed, and he also appeals. There are only two-fifths of the land in dispute, one-fifth being known as the Bulgin interest, and the other as the Wyne interest.

I. William G. Bulgin became seized in fee of one-fifth of the land in 1873, and both parties claim this fifth through him. Nathan Bray recovered judgment against Bulgin in the circuit court of Jasper

county on the seventh day of April, 1871, for $636, upon which an execution issued October 26, 1875, directed to the sheriff of said county, and the interest of said Bulgin in said land was by him sold under said execution to said Bray December 6, 1875, in pursuance of which sale the sheriff executed a deed in due form. By intermediate conveyances plaintiff acquired Bray's title to this interest.

The executors of the last will and testament of Ellwood B. James, deceased, commenced suit against said Bulgin, in 1868, in the circuit court of said county, but the latter being a resident of New Jersey the cause was, on his application, transferred to the circuit court of the United States for Missouri, which held its sittings in the city of St. Louis, and on the sixteenth day of September, 1873, the latter court rendered judgment against him for the sum of $7,142.40, on which an execution was issued on the eighteenth day of July, 1876, by virtue of which the United States marshal sold the Bulgin interest in the land to David S. Thomas, September 14, 1876, in pursuance of which sale a deed was duly executed. By intermediate conveyances the defendant Carter acquired Thomas' title to this interest.

The lien of the Bray judgment having expired before any attempt to enforce it was made the only question presented for decision is, whether the judgment rendered by the circuit court of the United States, sitting in St. Louis, in 1873, was a lien on Bulgin's land lying in Jasper county. The trial court in this case held that it was, and, therefore, that Carter's title to the Bulgin interest was superior to that acquired by plaintiff through Bray's purchase, the latter being subject to such lien, and in this we think it committed no error. The lien of a judgment is purely of statutory origin and creation. In Missouri judgments and

decrees are liens on the real estate of the person against whom they are rendered, situate in the county for which the court is held, and this lien continues for three years.

Section 967, United States Statutes [Ed. 1878], provides that "Judgments and decrees rendered in a circuit or district court within any state shall cease to be liens on real estate or chattels real, in the same manner and at like periods as judgments and decrees of the courts of such state cease, by law, to be liens."

Under this provision it has been uniformly held that the lien of a federal judgment is coextensive with the territorial jurisdiction of the court rendering it. Black on Judgments, sec. 415, *et seq.*, and cases cited. The act of congress approved August 1, 1888, materially changes this rule, but that act does not affect the question now before the court. Was Jasper county then, in which this land lies, within the territorial jurisdiction of the circuit court of the United States sitting in St. Louis in 1873? Prior to June 8, 1872, there was but one circuit court of the United States for Missouri, which sat in St. Louis, and its jurisdiction was coextensive with the whole state. By an act of congress approved at that time a circuit court was established for both districts of this state, which act directed the sessions of such court for the eastern district to be held in St. Louis and for the western district in Jefferson City.

Jasper county was within the limits of the western district. . Section 653, Revised Statutes of the United States [Ed. 1878], enacted February 25, 1873, provides that "the circuit court for the eastern district of Missouri is vested with full and complete jurisdiction to hear, determine and dispose of, according to the usual course of judicial proceedings, all suits, causes  *  *  * which were pending in the circuit court of the United

States in and for the districts of Missouri at the time the said circuit court for the eastern district of Missouri was created, * * * and also to make all orders and issue all processes which said circuit court of the United States in and for the districts of Missouri might have done, if it had not ceased to exist; and said circuit court * * * is vested with jurisdiction and authority to do all and singular that may, in the due course of judicial proceedings, pertain to any of said suits, causes or unfinished business as fully as the said circuit court in and for the districts of Missouri might have done if said circuit court had not ceased to exist."

The cause of the executors of James against Bulgin was pending in the circuit court of the United States on the eighth day of June, 1872, and, hence, that court retained jurisdiction to hear, determine and dispose of it according to the usual course of judicial proceedings, and to issue final process to enforce its judgments. We think the lien of the judgment against Bulgin, rendered in 1873, under the provisions of section 653, *supra*, was coextensive with the territorial jurisdiction of the circuit court of the United States as it existed at the time the cause in which the judgment was rendered was transferred to it. This jurisdiction at that time was coextensive with the state, and, hence, the judgment was a lien on Bulgin's real estate situated anywhere in the limits of the state. The sale under the judgment was made before the expiration of the lien, and it, therefore, operated to defeat Bray's purchase, and to transfer the Bulgin interest to Thomas.

II. We will now examine the claims of the respective parties to the Wyne interest. Defendant Carter claims this interest through two sheriff's deeds executed in pursuance of sales made under judgments against George M. Wyne, one deed dated in 1881, the other in 1888; and he averred in his answer that

the plaintiff's· title was tainted by fraud as to Wyne's creditors.

The evidence tended to prove that Ellwood B. James died in 1860, leaving a will by which he devised one-fifth interest in this land to his daughter, Myra J. James, who afterwards married George M. Wyne; that Mrs. Wyne, supposing it would be more convenient for her, united with her husband in a conveyance of this interest to J. H. Haines, without consideration, which was dated May 5, 1872, and recorded May 28, 1872, and on the last-named day Haines, without consideration, conveyed this same interest to said George M. Wyne, who. was to hold the title for his wife; on the twenty-fourth day of September, 1877, Wyne and wife conveyed this interest to Dorcas Earle, without consideration, and on the same day Dorcas Earle conveyed it to Mrs. Wyne, no consideration being paid, and on March 22, 1878, Wyne and his wife, for an expressed consideration of $3,000, conveyed this interest to Nathan Bray, through whom plaintiff derived title.

The conveyance of this land to Mrs. Wyne being made before the liens of the judgments under which Carter derived title attached, the latter's title must fail if that conveyance was *bona fide.* The trial court found it was a *bona fide* transaction, and we think such finding is well supported by the evidence. The interest originally belonged to Mrs. Wyne, and the evidence shows very clearly that the title to it was placed in her husband simply for convenience, as she supposed, and when it was conveyed to her in September, 1877, she got nothing except what was, in equity and in good conscience, her own.

The judgment of the circuit court in respect of both of these disputed interests being correct, it will be affirmed, and plaintiff and Carter will each be adjudged to pay one-half of the costs of these cross-appeals. All concur.