WILLIAM A. RHEA, Appellant, v. THOMAS C. SMITH.

In Banc, May 23, 1925.

1. **LIENS: Judgments of Federal and Appellate Courts: Transcript Necessary.** Judgments and decrees obtained in the Supreme Court, the courts of appeals, and in any United States district court held within this State, are liens upon the lands of the judgment debtor, when a transcript thereof is filed with the clerk of the State circuit court of the county in which such real estate is situate, and are not liens until such transcript is so filed. A judgment rendered by any one of such courts does not become a lien on real estate situate in the county in which sat the court which rendered it, or upon real estate situate in any other county, until a transcript of such judg-

Rhea v. Smith.

ment is filed with the State circuit court of the county in which the real estate is situate. [BLAIR and ATWOOD, JJ., dissenting.]

2. ————: Judgment of Federal Court: On Land in County of Judgment: Necessity for Transcript. By the acts of Congress and the statutes of this State a general judgment for debt rendered in a Federal district court does not become a lien on real estate situate in the county in which the judgment was rendered, until a transcript of such judgment is filed with the clerk of the State circuit court for such county, although the clerk of the Federal court may have in such county a permanent office and judgment record open at all times for public inspection, and if the judgment debtor conveys real estate before a transcript of the judgment rendered in the Federal district court is filed with the clerk of the State circuit court for the county in which the judgment is rendered and the real estate is situate, the grantee takes the title in preference to a purchaser at a sale under an execution issued on the judgment.

   *Held*, by BLAIR, J., dissenting, with whom ATWOOD, J., concurs, that the Federal statute, declaring that judgments rendered in a Federal court "shall be liens on property throughout such State in the same manner and to the same extent and under the same conditions only as if such judgments had been rendered by a court of general jurisdiction of such State," is controlling, and is broad enough to make a Federal court judgment a lien in the county where it is rendered without filing a transcript thereof in the State circuit court, and such Federal judgment is such lien from the date of its rendition.

3. ————: ————: Omitted Transcript: Court Held For County: Section 1555: General Lien. Section 1555, Revised Statutes 1919, declaring that "judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held," does not mean that, in order for the judgment rendered by a Federal district court to become a lien on real estate upon land situate in the county in which the judgment was rendered, the filing of a transcript with the clerk of the State circuit court for the county, may be omitted, just the same as if the judgment had been rendered in the State circuit court. It says that a judgment rendered by a court of record shall be a lien on the real estate of the person against whom it is rendered situate in the county "for" which the court is held, and not "in" which it is held. A Federal district court sitting in a particular county is not held "for" that county any more than for any other county in the district.

   *Held*, by BLAIR, J,. with whom ATWOOD, J., concurs, that the Federal statute controls, and it does not require that, in order for the judgment of a Federal district court to become a lien

upon real estate situate in the county in which the judgment is rendered, a transcript thereof must be filed with the clerk of the State circuit court, but such judgment becomes a lien on such land from the date of its rendition, without the filing of a transcript.

Citations to Headnotes: Headnote 1: **Judgments**, 34 C. J. sec. 885. Headnote 2: **Federal Courts**, 25 C. J. sec. 154 (Anno). Headnote 3: **Federal Courts**, 25 C. J. sec. 154 (Anno).

Appeal from Jasper Circuit Court.—*Hon. Grant Emerson*, Judge.

AFFIRMED.

*Thomas Hackney* for appellant.

(1)   The court erred in refusing plaintiff's declaration of law to the effect that the Federal judgment rendered at Joplin was a lien on the land in question without filing a transcript thereof in the office of the Clerk of the Circuit Court of Jasper County, Missouri. Secs. 1555, 1556, R. S. 1919; Sec. 1, chap. 729, 25 U. S. Stat. Act of August 1, 1888 (Sec. 1606, 3 U. S. Comp. Stat. 1916); Massingill v. Down, 7 How. 758; Ward v. Chamberlain, 2 Black. 430; Cook v. Avery, 147 U. S. 375; Metcalf v. Watertown, 153 U. S. 671; Dartmouth Sav. Bank v. Bates, 44 Fed. 546; Lineker v. Dillon, 275 Fed. 472; Dermott v. Carter, 109 Mo. 21.   (2)   The trial court erred in refusing plaintiff's declaration of law to the effect that the Federal court judgment was a lien on the property in question from the date of its rendition and that plaintiff by his purchase under the marshal's sales, acquired a title superior to that acquired by defendant. Authorities above.   (3)   The trial court erred in refusing plaintiffs' declaration of law to the effect that under the admitted facts the plaintiff by his purchase at the marshal's sales and by virtue of the marshal's deeds became the owner of the land in controversy and the title was superior to the title of defendant, and the plaintiff

is entitled to judgment establishing his title in fee and for recovery of agreed damages, rents and profits. Authorities above. The judgment against Blanche H. Whitlock was rendered January 10, 1921, this judgment being a lien on her real estate in Jasper County, as shown by the above authorities, the subsequent sale of the land under the two writs issued on this judgment and the execution and delivery of the two marshal's deeds to the plaintiff, vested in the plaintiff the title to the real estate, relating back to the date of the judgment lien, and the defendant's purchase having been made on April 5, 1921, subsequent to the rendition of the judgment, the plaintiff's title is superior to that of the defendant. Slattery v. Jones, 96 Mo. 216; Durrett v. Hulse, 67 Mo. 201; Union Bank v. Manard, 51 Mo. 548.

*W. R. Robertson* for respondent.

(1) Secs. 1555, 1556, R. S. 1919, do not undertake to create any judgment lien in behalf of the Federal court judgment creditor. This can be accomplished only by an act of Congress. Dartmouth Sav. Bank v. Bates, 44 Fed. 546. (2) The object and purpose of Congress in passing the Act of August 1, 1888, as it now stands, was to permit the legislatures of the various States to provide a method whereby the judgment liens of Federal and State courts would practically conform, the intent being to establish the office of the clerk of the circuit court, in the case of Missouri, as the place where the public may go, and is accustomed to go, for information as to the liens of judgments. Darmouth Sav. Bank v. Bates, 44 Fed. 546. (3) Should Section 3, as amended, now be in full force and effect, the plaintiff in this case, without taking any further action than securing his judgment in the Federal court, would be in the identical position for which he is now contending, but Congress repealed Section 3. "The courts must give effect to Section 3 while in force and attribute to Congress a substantial reason or motive for repealing the same." In re

Jackson Light & Traction Co., 265 Fed. 392. The repeal of Section 3 "rendered the same procedure as to a Federal court judgment necessary in the county where the judgment was rendered as was required in the other counties of the State in order to obtain a lien." Jackson Light & Traction Co., 265 Fed. 393. (4) The provisions of Sec. 1554, R. S. 1919, constitutes such conformity as will coincide in all of its details, and is that conformity which is reasonable, workable and just, which is all that is required of the Act of Congress. In re Jackson Light & Traction Co., 265 Fed. 223; Lineker v. Dillion, 275 Fed. 474. (5) The proviso in Section 1 of the Act of Congress of August 1, 1888, contains the essential legislation on the subject involved in this case, because "a proviso in a grant or enactment is something taken back from the power first declared. The grant or enactment is to be read, not as if the larger power was ever given, but as if no more was ever given than is contained within the terms or bounds of the proviso. . . . The office of a 'proviso' is to limit or restrict the general language preceding it and not to enlarge the enacting clause." Brown v. Patterson, 224 Mo. 639, 658.

WHITE, J.—Suit in two counts. The first, to determine title to certain real estate in Jasper County, and the second in ejectment to recover possession of such real estate. There was judgment for the defendant in the trial court, and he appealed.

The facts are undisputed. One Blanche H. Whitlock was the common source of title, and January 10, 1921, owned the property in dispute. On that day a judgment in a certain cause in which she was plaintiff, pending in the United States District Court for the Southern Division of the Western District of Missouri, at Joplin, was dismissed, and the cost of the case adjudged against her in the sum of $8,890.20. No transcript of this judgment was ever filed in the office of the Clerk of the Circuit Court of Jasper County.

On April 5, 1921, Blanche Whitlock conveyed the property in dispute to the defendant, Thomas C. Smith,

Rhea v. Smith.

for a consideration of $5,000, of which $2800 was paid in cash, the purchaser assuming a mortgage on the premises for the balance.

On July 22, 1921, execution was issued upon the judgment, and by virtue of that execution the United States Marshal sold for $200, to the plaintiff Rhea, a portion of the property in dispute, and by marshal's deed conveyed it to him.

On December —, 1921, another execution was issued on the judgment under which the marshal sold the remainder of the land in dispute. It was purchased by the plaintiff for $25, and conveyance made to him.

It is claimed by appellant that the judgment of the Federal court was a lien on the real estate from its rendition, that he acquired title through the execution sales, and therefore his title was superior to any title acquired by subsequent conveyance of the judgment debtor. Respondent claims that in the absence of a transcript of the same, filed in the office of the clerk of the circuit court of that county, the judgment of the Federal court was not a lien, and that the conveyance to respondent prior to the execution sales passed good title.

The statutes of the State of Missouri relating to the lien of judgments are as follows:

"Sec. 1554. Judgments and decrees obtained in the Supreme Court, in any United States district or circuit court held within this State, in the Kansas City Court of Appeals or the St. Louis Court of Appeals, shall, upon the filing of a transcript thereof in the office of the clerk of any circuit court, be a lien on the real estate of the person against whom such judgment or decree is rendered, situate in the county in which such transcript is filed.

"Sec. 1555. Judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held.

"Sec. 1556. The lien of a judgment or decree shall extend as well to the real estate acquired after the

rendition thereof as to that which was owned when the judgment or decree was rendered. Such liens shall commence on the day of the rendition of the judgment, and shall continue for three years, subject to be revived as hereinafter provided; but when two or more judgments or decrees are rendered at the same term, as between the parties entitled to such judgments or decrees, the lien shall commence on the last day of the term at which they are rendered." [R. S. 1919.]

The Federal statute affecting the liens of judgments in a Federal court (Act of 1888), was as follows:

"Sec. 1. Judgments and decrees rendered in a (circuit or) district court of the United States within any State, shall be liens on property throughout such State in the same manner and to the same extent, and under the same conditions only, as if such judgments and decrees had been rendered by a court of general jurisdiction of such State: provided, that whenever the laws of any State require a judgment or decree of a State court to be registered, recorded, docketed, indexed or any other thing to be done, in a particular manner, or in a certain office or county, or parish in the State of Louisiana, before a lien shall attach, this act shall be applicable therein whenever and only whenever the laws of such State shall authorize the judgments and decrees of the United States courts to be registered, recorded, docketed, indexed or otherwise conformed to the rules and requirements relating to the judgments and decrees of the courts of the State.

"2. The clerks of the several courts of the United States shall prepare and keep in their respective offices complete and convenient indices and cross-indices of the judgment records of said courts, and such indices and records shall be at all times open to the inspection and examination of the public."

Section 3 of the Act, amended from time to time, and later repealed, was as follows:

"3. That nothing herein shall be construed to require the docketing of a judgment or decree of a United

States court, or the filing of a transcript thereof, in any State office within the same county or the same parish in the State of Louisiana in which the judgment or decree is rendered, in order that such judgment or decree may be a lien on any property within such county, if the clerk of the United States court be required by law to have a permanent office and a judgment record open at all times for public inspection in such county or parish."

Section 1554, Revised Statutes 1919, says that "judgments and decrees obtained in the Supreme Court, in any United States district or circuit court held within this State, in the Kansas City Court of Appeals or the St. Louis Court of Appeals, shall, upon the filing of a transcript thereof in the office of the clerk of the circuit court, be a lien," on real estate in the county.

*Necessity for Transcript.*

There are two Federal districts in this State, as there are three state courts of appeals districts in this State. Can it be said that a judgment rendered by the Supreme Court would be a lien upon the real estate of a judgment defendant in Cole County without filing a transcript of the judgment with the circuit clerk of that county, while such a transcript would have to be filed in order to make it a lien upon real estate in any other county? Likewise, would a judgment, rendered by the Kansas City Court of Appeals, be a lien upon real estate of the judgment defendant in Jackson County, without filing a transcript in the office of the circuit clerk, while it would not be a lien on property in any other county unless such transcript was filed? Certainly that is not the general understanding of the bar, nor is it the correct interpretation of the statute. In such case a transcript must be filed with the circuit clerk of the county where the property is, regardless of where the court happens to sit. In that respect the United States district and circuit courts are put on the same basis as the State courts having a territorial jurisdiction more than the county.

It is argued by appellant that Section 1554, Revised Statutes 1919, conflicts with the Federal Statute. So it would if Section 3 of the Federal statute were still in force. The purpose of the Act of 1888, as it existed before the repeal of Section 3, is thus stated by the Federal circuit court in the case of Dartmouth Savings Bank v. Bates, 44 Fed. 1. c. 548-9:

"It is quite obvious that if Congress or the Federal courts had possessed the power to require the clerks of the State courts to enter on the records of these courts the judgments of the Federal courts as was provided in the case of judgments of the State courts, that the rule that the lien of a judgment of a Federal court was co-extensive with the territorial jurisdiction of the court would never have been adopted. The process acts did not cover the case, and could not be made to do so. If the courts held a lien which was restricted to the county in which the judgment was rendered, this would give a preference to suitors in the State courts, because they could extend the lien of their judgments beyond the county in which they were rendered by filing transcripts in the clerk's office of other counties; but suitors in the Federal courts were denied that privilege. The rule, therefore, was adopted of making the lien co-extensive with the jurisdiction of the court.

"This rule resulted in giving suitors in the Federal courts a preference over those in the State courts as to the territorial extent of the lien, and worked a hardship on the citizens generally. The mass of people relied confidently on the records in the clerk's office of their county disclosing all judgments that were liens on property in the county. Most people were ignorant of the all-pervading lien of a judgment in the Federal court, and they bought and sold lands on the faith of what the county records disclosed. The result was that cases of great hardship occurred. Persons who bought and paid for lands on the faith that the records in the county clerk's office showed the condition of the land with reference to judgment liens thereon, afterwards lost their

land by reason of the liens of judgments in Federal courts held in some other county, and often at a distance of hundreds of miles from the county in which the lands lay.

"To correct these hardships, and to put the suitors in the State and Federal courts on an equal footing in respect of the territorial extent of the liens of judgments in the two jurisdictions, in so far as Congress could do it, the Act of August 1, 1888, was passed."

Two significant statements appear in that excerpt: First, that the Federal court was powerless to cause a clerk of the State circuit court to file a transcript of a judgment of the Federal court; second, it was important that the people should have one place in which to ascertain whether there was a judgment lien against the property with which they are concerned. The appellant seeks a construction of the Federal statute the same as it would read if Section 3 had not been repealed. Section 3 provided that there shall be no requirement to file a transcript in any county office if "the clerk of the United States court be required by law to have a permanent office and judgment record open at all times for public inspection in such county."

That condition obtained in this case; the Federal court had an office in Jasper County, containing a judgment record, open at all times for public inspection. If Section 3 had been still in force that provision would have answered the purpose of the law, but Section 3 was repealed and the maintenance of such an office where judgment records are open to inspection has no effect upon the determination of the question at issue. The Act of Congress must be construed according to its terms set out in Sections 1 and 2; it must be construed with reference to the repeal of Section 3, and some significance must be attached to the Act of Congress in repealing that section. Without that section, transcripts of judgments of a Federal court were required to be filed in the county records when transcripts of judgments in State courts were required to be so filed. Sec-

tion 3 relieved a judgment creditor in the Federal court from that requirement in a certain instance. The repeal of the section shows an intent to make that requirement.

Having in view the purpose of repealing that provision of the Federal statute, we must construe its remaining provisions. It provides that the judgments of Federal courts, within the State, "shall be liens on property *throughout such State* in the same manner and to the same extent and under the same conditions *only* as if such judgments and decrees had been rendered by a court of general jurisdiction of such State."

It is evident that it was the intention by that statute to place judgments of Federal courts in the same position as judgments of the State court and not to give them any advantage. The lien provided for is on property "*throughout such State*" in the same manner as judgments of a court of general jurisdiction in the State. That would, of course, apply to *all* property in the territorial jurisdiction of the court. When a judgment in the Federal court is rendered there is no distinction, as to where the lien applies, between the county where the court happens to sit and any other county within the territorial jurisdiction of the court.

The appellant's argument proceeds upon the theory that because the circuit court is the only State court of *general jurisdiction,* and because the Federal district and circuit courts are courts of general jurisdiction, the filing of the transcript in the county where the court sits, may be omitted in the case of a Federal court the same as in the State circuit court. Section 1555, Revised Statutes 1919, does not provide for such liens when a judgment is rendered by a court held *in* the county. It says that a judgment rendered by a court of record shall be a lien on the real estate of the person against whom it is rendered, situate in the county "*for which*" the court is held, not "in" which. The Federal court sitting in Jasper County is not held "for" that county any more than for any other county in the Western Dis-

trict of Missouri. It is held for the entire district. The court may hear a case in Jasper County and render judgment in the case in Greene County, or Jackson County, or, as sometimes happens, the court may hear part of the evidence in one county and the remainder in another, and render judgment in a third, and pass upon a motion for rehearing in a fourth. It sits for the entire district, one county is of as muchimportance as any other, and no more; Jasper County in which the court happened to'sit in the present instance is entitled to no more advantage than any other county in the district. Apparently the intention was to place the Federal courts on an equality with the State courts of similar territorial jurisdiction. Evidently it was the policy of the law to have one definite place where a person might go to ascertain whether there are any judgment liens affecting real estate in which he might be interested; he would not have to go to several places. To say that, in order to place the Federal district court on equality with the State court, a judgment of that court must be a lien in the county where it is rendered without filing the transcript with the clerk of the circuit court, is to give that court an advantage over the State circuit courts of every other county in that district. For instance: In the Southern Division of the Western District of Missouri, parties litigant come from counties in every part of the division. Parties to litigation arising in a county distant from where the court is held, upon the rendition of a judgment, would have a lien in the county where the court is held, whereas the same party, if the suit were pending in the State court in the county where the cause originated, would not have any such lien until a transcript of the judgment was filed. For instance, suppose a party in Lawrence County should sue a non-resident in the Federal court, and judgment should be rendered in Jasper County where the property of the judgment defendant is. On the theory of the appellant, that judgment would be a lien without the filing of a transcript. Whereas, if another suitor in Lawrence County, having

the same kind of a case, should sue in the State court of Lawrence County and obtain a judgment at the same time, he could not have a lien on the property of the defendant in Jasper County until he had first filed his transcript. In providing for equality between the judgment of Federal courts and State courts, so far as the lien is concerned, the endeavor was to place them upon an equality with all the State courts of general jurisdiction, and not merely with one particular State court.

The alleged discrimination in favor of a State court against a Federal court, sitting in the same county, is only apparent. The provision that the lien of a judgment shall begin from its rendition means on the same day of its rendition. It would take but a short time to transcribe a judgment of the Federal court and file it with the clerk of the State court on the day of its rendition, and thus put it on a par with the judgment of the State court rendered on the same day. A case in point is In re Jackson Light & Traction Company v. Newton, 269 Fed. 223. That arose in the Federal Court of Appeals for the Fifth District concerning a judgment rendered in Mississippi. The State statute provided for the enrollment of a judgment in the State court, in order that it might become a lien upon the property in the county. Judgments of the Federal court, the Supreme Court, and chancery courts became liens from the time they were enrolled. Whereas, the judgment of a State court in the county where it was rendered when it was enrolled, became a lien upon the property in that county from the time of its rendition. It is claimed by appellant that this case was not in point because in either case, whether it was a Federal judgment or a judgment in a State court, no lien attached until the judgment was enrolled. The enrollment, however, was apparently for the purpose of furnishing evidence that there was a judgment. The lien, of which the enrolled judgment in the local court was evidence, attached from the *rendition* of the judgment, whereas the lien of the Federal court and the Supreme Court of the State, did not attach until

enrolled in the office of the Clerk of the Circuit Court of the county. The distinction in that case, if there is one in favor of the State court, was even more pronounced that the requirement of our State statute in Missouri.

But under the present law of the State, circumstances easily could arise where a judgment in the Federal court would have an advantage over a judgment in the State court, rendered at the same time. Under Section 1556, if more than one judgment is rendered against the same defendant at the same term of the State circuit court, the lien of neither judgment begins on the date of its rendition, but the liens of both judgments date from the last day of that term of the court. A judgment in the Federal court might have an advantage in that the lien would begin from the time the transcript was filed, although it might be rendered later than the two judgments rendered in the State court but before the expiration of the term at which they were rendered.

The judgment is affirmed. *Graves, C. J., Woodson* and *Walker, JJ.*, concur; *Ragland, J.*, concurs in the result; *Blair, J.*, dissents in a separate opinion; *Atwood, J.*, dissents.

DAVID E. BLAIR, J. (dissenting).—This case was assigned to me in Division Two, where I wrote an opinion holding that the judgment below should be reversed and remanded with directions. My brother WHITE there wrote an opinion, which was labeled a dissenting opinion, and took the contrary view. As there was no opinion in division, the case was transferred to Court en Banc. Here the majority of the court rejected my opinion and the case was reassigned to Judge WHITE and he has written the opinion of the court. I have carefully considered his opinion and cannot yield my concurrence therein and respectfully dissent. I will use by divisional opinion, omitting the statement of facts. Certain other suggestions have been added.

The sole question, presented by the record below and by the briefs and arguments of counsel in this court,

is whether or not a judgment of a Federal district court
is a lien upon real estate of the judgment debtor, situ-
ated in the county where such judgment is rendered,
from the date of its rendition, without a certified tran-
script thereof having been filed in the office of the clerk
of the circuit court of such county. If so, the judgment
should be reversed. If not, the judgment should be af-
firmed.

It is conceded that in Congress rests the sole power
to legislate upon the subject of liens of judgments of
courts of the Federal Government. We must, therefore,
first look to the acts of Congress. Section 1 of the Act
of August 1, 1888 (25 Statutes at Large, 357) reads as
follows:

"Judgments and decrees rendered in a circuit or
district court of the United States within any State,
shall be liens on property throughout such State in the
same manner and to the same extent and under the same
conditions only as if such judgments and decrees had
been rendered by a court of general jurisdiction of such
State; provided, that whenever the laws of any State
require a judgment or decree of a State court to be
registered, recorded, docketed, indexed or any other
thing to be done, in a particular manner, or in a certain
office or county, or parish in the State of Louisiana be-
fore a lien shall attach, this act shall be applicable there-
in whenever and only whenever the laws of such State
shall authorize the judgments and decrees of the United
States courts to be registered, recorded, docketed, in-
dexed or otherwise conformed to the rules and require-
ments relating to the judgments and decrees of the courts
of the State."

Section 2 of said act throws no particular light up-
on the subject of our inquiry. It merely provides that
clerks of the courts of the United States shall keep rec-
ords and indices of judgments of said courts. The court
of general jurisdiction mentioned in Section 1 is the cir-
cuit court in Missouri. That court and the Supreme
Court and the several courts of appeals, together with

the county court and the probate court, are courts of record in this State. [Sec. 2323, R. S. 1919.] Section 1555, Revised Statutes 1919, provides that "judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held." Section 1556 provides that such lien shall commence on the day of rendition and continue for three years.

It is appellant's contention that, as the circuit court is the State court of general jurisdiction and as its judgments are liens upon the real estate of judgment debtors situate in the county for which such court is held and, as Section 1 of the Federal act, above quoted, provides that judgments of the Federal courts "shall be liens on property throughout such state *in the same manner and to the same extent and under the same conditions only*" as judgments rendered by the circuit court, appellant's judgment against Mrs. Whitlock became a lien against the real estate here involved from and after its rendition in the Federal court and that appellant's title, acquired by purchase at the sale under execution issued on such judgment, is superior to the title of respondent by virtue of a deed from the judgment debtor, executed and delivered after such judgment was rendered. To arrive at the correct conclusion, it is necessary to understand the history, nature and extent of liens of Federal court judgments prior to the enactment by Congress of the Act of August 1, 1888. At that time judgments of Federal courts were liens upon real estate of the judgment debtor, not only in the county where such judgments were rendered, but in all counties within the territorial jurisdiction of the court rendering same.

The majority opinion quotes from the opinion of Judge CALDWELL in Dartmouth Savings Bank v. Bates, 44 Fed. 546, where such history is discussed, but omits a very important part of such opinion and I here quote it in connection with the quotation set out in Judge WHITE's opinion, to-wit:

"The first clause of the act places judgment liens in a Federal court *on the same footing in all respects* as a judgment lien in a State court of general jurisdiction. But the power of Congress was not adequate to the task of *extending the territorial operation of a judgment lien* in the mode provided by State laws for a judgment in the State court. Congress was confronted with the difficulty pointed out by Mr. Justice McLEAN, the law of a State might provide for filing and docketing a transcript of a judgment of a State court in the clerk's office of any county in the State, and in this way extend the lien of a judgment beyond the county in which it was rendered. But there was no Federal clerk's office, or other like office, in each county in the State in which a judgment rendered in a Federal court could be docketed; and Congress could not make it obligatory on the State clerks to docket and enter a judgment of a Federal court on their records. But it was entirely competent for the State to require her clerks to perform this service, and the proviso in Section 1 of the act declares, in legal effect, that when the laws of a State provide for docketing in her clerks' offices, or other offices, the judgments of Federal Courts, in the same manner that judgments in her own courts may be docketed, then, and not before, the territorial extent (*in other respects they were already the same*) of the lien of a judgment in a Federal court in that State shall be the same as that of a judgment in the State court. Where the laws of a State provide for docketing the judgments of its own courts in any county in the State, but do not make a like provision as to the judgments of the Federal court, the act of Congress is not operative; and *in such States the lien of a judgment of a Federal court continues to be coextensive with its territorial jurisdiction.*" [Italics my own.]

It is apparent from reading the first section of the Act of August 1, 1888, that Congress intended to change the existing rule that Federal court judgments are a lien upon lands throughout the territorial jurisdiction

of such courts, only in those States which passed laws authorizing Federal court judgments to be registered, recorded, docketed, indexed or otherwise conformed to the rules and requirements relating to the judgments and decrees of State courts, and that, where any State has not passed such laws, the rule that Federal judgments are a lien throughout the territorial jurisdiction of such courts is still in full force and effect.

In Lineker v. Dillon, 275 Fed. 460, VAN FLEET, J., in discussing laws of such character passed by the State of California, said, at page 475:

"I am satisfied that the legislation, whether from inadvertence or otherwise, does not, for the reasons stated, afford that degree of 'conformity' which the act of Congress contemplates as essential to bring it within the latter and put judgments of Federal courts on an equality with those of the State; that consequently the act of Congress does not take effect in this State, but the judgments of these courts must be regarded as constituting therein liens on the real estate of judgment debtors throughout the extent of their territorial jurisdiction."

This State has enacted legislation enabling transcripts of Federal court judgments to be filed in the offices of the clerks of the circuit courts of the counties of the State and thereupon to become liens upon the real estate belonging to judgment debtors, situate therein, in the same manner as judgments of courts of one county may be transcripted to another county. [Secs. 1554 and 1583, R. S. 1919.]

Taking by itself the language of that part of Section 1 of the Federal act preceding the proviso, I think there can be no doubt that the judgment we are considering became a lien upon the property here involved from the day of its rendition. The language "in the same manner and to the same extent and under the same conditions" is broad enough to make a Federal court judgment a lien in the county where it is rendered without filing a transcript thereof, *if a judgment of the State court of general jurisdiction constitutes such lien.* "In

the same manner'' and ''under the same conditions'' can mean nothing else. ''To the same extent'' may refer to the kind of property to which such lien attaches or to the territorial extent of the lien or to both. If a State makes its judgments a lien on real estate only, then Federal judgments become liens on such property only. If such lien extends only to the county, then the lien of the Federal court judgment is so limited. The status of the lien of a judgment of the State court of general jurisdiction fixes the status of the lien of Federal court judgments *in every respect*. Such is the only meaning which can fairly be given to Section 1 of the Federal act.

Respondent argues and the majority of my brethren seem to hold that the repeal by Congress in 1916 (39 Statutes at Large, p. 531) of Section 3 of Act of August 1, 1888, as amended in 1895, shows that it was the intention of Congress to make a Federal court judgment a lien upon real estate in the county where same was rendered only upon filing of a transcript therein. Section 3, as enacted, read as follows:

''Nothing herein shall be construed to require the docketing of a judgment or decree of a United States court or the filing of a transcript thereof, in any State office within the same county or parish in the State of Louisiana in which the judgment or decree is rendered in order that such judgment or decree may be a lien on any property within such county.''

In 1895 the following words were added thereto: ''If the clerk of the United States court be required by law to have a permanent office and a judgment record open at all times for public inspection in such county or parish.'' (28 Statutes at Large, 814.)

The fact of such repeal furnishes respondent with a very plausible argument that Section 1 did not originally and does not now make a Federal court judgment a lien in the county where rendered unless a transcript thereof is filed in such county. I regard the argument as unsound. We are not advised of the reasons presented to Congress which actuated it in enacting Sec-

tion 3 in the first place or in later repealing said section, after it had been amended.  The provision that a Federal court judgment should be a lien upon rendition in the county where such judgment was rendered without filing a transcript therein gave an advantage to Federal judgment creditors not possessed by judgment creditors *in the courts of those States which require particular steps to be taken in addition to the mere rendition of a judgment before it becomes a lien in the county where rendered,* and Section 3 tended to prevent the complete harmony and conformity aimed at in Section 1.  A very good and completely satisfying reason for repealing Section 3 is found in the evident purpose of Congress to put Federal judgments on exactly the same footing as state judgments.  The enactment of Section 3 failed to accomplish this in all cases and its repeal did effectually accomplish such purpose in all cases and in every State. It is inconceivable to me, as it is contended in respondent's brief, that, by such repeal, Congress intended that judgments of Federal courts should not become a lien in the county where rendered unless and until a transcript thereof is filed in the circuit clerk's office, while the State court judgment becomes a lien therein without such procedure.  Such a purpose would be in hopeless conflict with the purpose expressed in Section 1.

Respondent places great reliance upon, and the majority opinion cites, the case of In re Jackson Light & Traction Co., 265 Fed. 389, and same case upon appeal, 269 Fed. 223.  Mississippi is one of the states which requires certain subsequent steps to be taken before a State court judgment becomes a lien *even in the county of rendition,* and, of course, under Section 1 of the Federal act, the same steps had to be taken *in that State* with respect to a Federal court judgment before it became a lien.  In that case the judgment creditor in the Federal court failed to have his judgment enrolled in the proper office in the county until after the judgment debtor went into bankruptcy and it was held that such judgment was not entitled to priority.  The reasons advanced by the

district court were similar to those advanced by respond-
ent here, to-wit, that Section 3 provided that no tran-
script was necessary and that its repeal made the filing
of such transcript necessary. HOLMES, District Judge,
said: "Section 3 obviated the necessity of such en-
rollment, but the repeal of Section 3, by the act above
quoted, which became effective January 1, 1917, ren-
dered the same procedure as to a Federal court judgment
necessary in the county where the judgment was ren-
dered as was required in the other counties of the State
in order to obtain a lien." The learned district judge
seemingly erred in his reasoning, although his conclusion
was correct. The enrollment was in fact necessary un-
der Section 1 of the Federal act, because such enroll-
ment was necessary in the case of a State court judgment
in the county where rendered.

When the case came to the Circuit Court of Appeals
for the Fifth Circuit, no such reasons were given for
affirming the judgment. Section 1 of the Federal act was
quoted, and it was said: "We cannot see, therefore,
where there is any discrimination against the United
States courts when they are put on the same footing
with the State Supreme Court, and every other State
court at law or in equity where the judgment is not ren-
dered in the same court on whose judgment roll an ab-
stract must be enrolled in order to give it a lien on the
property of the judgment debtor." The fact of the re-
peal of Section 3 of the Federal act was not mentioned by
the Circuit Court of Appeals, and therefore the effect
of such repeal was not considered. I think the case lends
no support to the contention of respondent here.

The majority opinion, as does respondent, lays much
stress upon Section 1554 of our statute, which provides
that judgments obtained in the Supreme Court, the court
of appeals and Federal trial courts shall be liens in *any*
county in the State wherein a transcript thereof shall
be filed. Apparently this section is one making provi-
sion for a lien broader in territorial application than the

lien attaching upon mere rendition of the judgment. It apparently has no reference to the latter sort of lien.

It required no action upon the part of the Missouri Legislature to give a lien to a judgment of the Federal District Court. That is the exclusive prerogative of Congress. Therefore, our Legislature, in enacting Section 1554, undertook to do nothing more than to put Federal court judgments upon an equality with State court judgments by authorizing the filing of transcripts thereof in any county of the State and providing for a lien therein upon such filing.

Section 1554 is the conformity statute of Missouri without the enactment of which the Act of Congress of 1888 would have no application whatever to Federal court judgments rendered in this State. If that section be construed by us as requiring the filing of a transcript of a Federal court judgment in the office of the clerk of the circuit court of the county wherein such Federal court judgment is rendered, then Missouri has passed no adequate conformity law and the judgment of appellant must be held to be a lien throughout the territorial jurisdiction of the Federal district court which rendered it, including Jasper County (Lineker v. Dillon, supra; Dermott v. Carter, 109 Mo. 21), and respondent's case is not helped in the least, because a sale under execution upon appellant's judgment gave appellant good title to the real estate under either view.

In my opinion, the judgment below should be reversed with directions to the trial court to set aside its judgment for defendant and to enter its judgment finding that, as against defendant, the plaintiff (appellant) is the owner of the real estate here involved and that defendant has no right, title or interest therein and ejecting defendant therefrom, with judgment in plaintiff's favor for the agreed rents and profits. *Atwood, J.,* concurs herein.